**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Vanessa Denise Daniels,<br><br>                                Debtor(s). | C/A No. 18-00329-EG<br><br>Adv. Pro. No. 23-80062-EG<br><br>Chapter 13 |
| Vanessa Denise Daniels,<br><br>                                Plaintiff(s),<br><br>v.<br><br>Solo's Auto Sales, LLC,<br><br>                                Defendant(s). | **AMENDED ORDER COMPELLING RELEASE OF LIEN AND AWARDING DAMAGES**[1] |

**THIS MATTER** is before the Court on the Affidavit of Default and Request for Default Judgment ("Request for Default Judgment") filed by Vanessa Denise Daniels ("Plaintiff" or "Debtor").[2] In the Affidavit of Default, Plaintiff attests to serving the summons and complaint in this action upon Solo's Auto Sales, LLC ("Defendant") and further attests that the time for responding to the complaint has passed and Defendant has not responded to the complaint or otherwise appeared in this proceeding. Plaintiff requests entry of a default judgment and an order finding that Defendant has violated the discharge injunction, requiring Defendant to immediately release the lien and forward the title to the 2004 Honda Accord (the "Vehicle") to Plaintiff and awarding further damages and remedies. The Court entered an Order (the "Order Scheduling Hearing") scheduling a hearing on the Request for Default Judgment and requiring (a) Plaintiff's counsel to file an affidavit regarding his fees and expenses in connection with the filing of this

---

[1] This order is being amended to correct typographical errors. Nothing herein alters the effectiveness of the original order entered on March 18, 2024. The deadlines set forth herein have been restated to dates certain for clarification purposes.
[2] ECF No. 14, filed Feb. 2, 2024.

adversary proceeding or any documents related thereto and (b) Plaintiff to file an affidavit concerning any other damages requested.[3] The Order Scheduling Hearing required Plaintiff to serve a copy of the Order as well as copies of any affidavits filed upon the Defendant. It appears from the certificates of service filed on the record that Plaintiff served Defendant with copies of the Order Scheduling Hearing and the affidavits filed by Plaintiff and her counsel.[4] The record further reflects that Defendant has not filed an objection to the Request for Default Judgment. The Court held a hearing on March 12, 2024, which was attended by counsel for Plaintiff ("Plaintiff's Counsel"); however, no one appeared on behalf of Defendant at the hearing. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (O). The Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052.

## FINDINGS OF FACT

Debtor filed for relief under Chapter 13 of the Bankruptcy Code on January 25, 2018 (the "Petition Date").[5] Debtor also filed a Chapter 13 Plan ("Plan") on the Petition Date. Defendant was served with Notice of the Bankruptcy Filing and the Chapter 13 Plan at its business address of 1005 East Smith Street, Timmonsville, SC 29161 (the "Business Address"). A proof of claim was filed by Defendant's agent, Chapter Holdings LLC (the "Agent"), on April 5, 2018, asserting a claim in the amount of $4,791.67, secured by a lien on a 2004 Honda Accord (the "Vehicle"), and providing that, while payments were to be sent to the Agent, notices should be sent to the

---

[3] ECF No. 15, filed Feb. 5, 2024.
[4] Certificate of Service Re: Order Setting Hearing and Deadlines, ECF No. 16, filed Feb. 8, 2024; Certificate of Service Re: Affidavit, ECF No. 21, filed Feb. 23, 2024; Certificate of Service Re: Affidavit, ECF No. 22, filed Feb. 23, 2024.
[5] Case No. 18-00329-EG, ECF No. 1.

2

Business Address.[6] No objections to the Plan were filed, and the Court confirmed the Plan on May 30, 2018.[7] The Plan provides for payment of Defendant's claim in full without valuation or lien avoidance in the amount of $4,895.00 with interest at 5.25%. It further provides that "Secured Creditors paid the full secured claim provided for by this plan shall satisfy any liens within a reasonable time."

On September 8, 2023, the Chapter 13 Trustee filed the Report of Completion of Plan Payments by Debtor and the Trustee's Notice to Debtor of Plan Completion and Notification of Need to File Request for Discharge.[8] The Report confirms that Defendant, through its Agent, received payment in full of its claim in the amount of $4,791.67 as well as interest of $592.24. On September 13, 2023, Debtor filed the Certification of Plan Completion and Request for Discharge ("Certification").[9] The Certification was served on Defendant at the Business Address. No objections were filed, and an Order Discharging Debtor was entered on October 5, 2023 (the "Discharge Order").[10] The Discharge Order was served on Defendant at the Business Address.[11] The Discharge Order provides that a discharge under 11 U.S.C. § 1328(a) is granted to Plaintiff and further explains that "no one may make any attempt to collect a discharged debt from the debtors personally" and that "a creditor with a lien may enforce a claim against the debtors' property subject to that lien *unless the lien was avoided or eliminated*." (emphasis added) The Discharge Order further states that "[c]reditors who violate this order can be required to pay debtors damages and attorney's fees."

---

[6] The Proof of Claim indicates that it was filed on behalf of Solo's Used Sales, LLC, but the attached supporting documentation indicates the creditor's name is Solo's Auto Sales, LLC. An online search of the business filings with the Secretary of State indicates that the proper entity name is Solo's Auto Sales, LLC and that there is no business entity named Solo's Used Sales, LLC registered in South Carolina.
[7] Case No. 18-00329-EG, ECF No. 22.
[8] Case No. 18-00329-EG, ECF No. 36.
[9] Case No. 18-00329-EG, ECF No. 37.
[10] Case No. 18-00329-EG, ECF No. 38.
[11] Case No. 18-00329-EG, ECF No. 39.

3

In her affidavit filed on February 16, 2024 (the "Affidavit"), Plaintiff stated that on or about December 7, 2023, she called Defendant and spoke with Tami Carraway, who identified herself as a manager and requested the release of the title for the Vehicle which had been paid off under the Plan.[12] Ms. Carraway informed Plaintiff that the loan had not been paid off and Defendant would not be releasing the title to her. Plaintiff stated that she contacted her bankruptcy counsel, who reached out to Defendant several times in the following week to request the title.[13] On or about December 13, 2023, Defendant repossessed the Vehicle. According to Plaintiff's Counsel, Defendant was hostile and uncooperative when contacted by Plaintiff's Counsel and he believes the repossession was a vindictive act in response to his request for the title.

After Defendant repossessed the Vehicle, Plaintiff stated in her Affidavit that Defendant allowed her to pick up her personal items, including her work badge, from the Business Address, which required her to drive for approximately one hour and 30 miles round-trip. According to Plaintiff, she was required to wait 20 minutes before Defendant returned her personal items.

On December 14, 2023, Plaintiff filed the Complaint seeking turnover, attorney's fees, and actual and punitive damages for contempt of the Discharge Order based upon Defendant's wrongful repossession and refusal to release the Vehicle's title as required by the Confirmed Plan. On the same date, Plaintiff also filed a Motion for Immediate Turnover of the Vehicle and a Motion to Expedite the Hearing. On December 15, 2023, Plaintiff served a copy of the Motion to Expedite the hearing on the Motion for Immediate Turnover and Order Granting Motion to Expedite on Defendant by email and fax on December 14, 2024 in compliance with the order, as well as by

---

[12] ECF No. 17.
[13] An affidavit of Plaintiff's Counsel confirms that he contacted Defendant to demand release of the title on December 13, 2023. Following the repossession of the Vehicle on or about December 13, 2023, Plaintiff's Counsel contacted Defendant to demand return of the vehicle and release of the title on December 14, 2023, December 15, 2023, December 18, 2023, and December 19, 2023.

4

Document      Page 5 of 13

first class mail on December 15, 2024, addressed to the attention of its Officer and Registered Agent, Levester McKithen, at the Business Address.[14] The Court conducted a hearing on the Motion for Turnover on December 18, 2023. Defendant did not appear at the hearing. The Court entered an Order Granting Debtor's Motion for Turnover (the "Turnover Order"),[15] requiring Defendant to immediately return the Vehicle at Defendant's sole expense, along with the keys, any other accessories for the Vehicle, and any personal possessions of Plaintiff that were inside the Vehicle when Defendant repossessed it, and providing that to the extent that Defendant does not comply with this Turnover Order, Plaintiff may request that sanctions or damages be imposed. The Clerk's Office served a copy of the Turnover Order on Defendant by email and first-class mail addressed to Levester McKithen as Officer and Registered Agent at the Business Address.[16]

According to Plaintiff's Affidavit, after entry of the Turnover Order, Defendant refused to return the Vehicle to Plaintiff but allowed Plaintiff to retrieve the Vehicle from the Business Address, requiring her to make a second 30-mile round trip to Defendant's Business Address. Plaintiff's Counsel reported to the Court that Plaintiff was required to miss work to retrieve the Vehicle and her personal items, but she was able to use accrued time off and did not lose income as a result. Plaintiff's Counsel filed an Affidavit stating that Plaintiff incurred attorney's fees and costs in connection with the prosecution of this adversary proceeding and attaching a detailed billing statement.[17] At the hearing, Plaintiff's Counsel submitted an updated billing statement into evidence with fees and costs incurred through the hearing, which totaled $4,345.00.[18]

---

[14] ECF Nos. 5; 7.
[15] ECF No.11, filed Dec. 18, 2023.
[16] ECF No. 12, filed Dec. 20, 2023.
[17] ECF No. 18, filed Feb. 16, 2024.
[18] Plaintiff's Ex. A.

On January 23, 2024, the Court entered an Order observing that Defendant had failed to file a responding answer or motion to the Complaint, and to the extent that Plaintiff was seeking additional relief under the Complaint beyond the Turnover Order, she would need to file an affidavit of default and motion for default judgment.[19]  In response, Plaintiff filed the Affidavit of Default and Request for Default Judgment as well as Affidavits of both Plaintiff and Plaintiff's Counsel supporting the damages requested in the Complaint.[20]

## CONCLUSIONS OF LAW

Plaintiff seeks an order compelling Defendant to (1) release its lien on the Vehicle in accordance with the Confirmed Plan because Plaintiff has paid in full Defendant's secured claim, (2) reimburse her for her attorney's fees incurred in connection with this matter, (3) reimburse her for her actual damages of $36.30 for mileage, and (4) pay punitive damages.

Under 11 U.S.C. §1327(a), a secured creditor is bound by its treatment under the confirmed plan.  11 U.S.C. §1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.")  The Plan provided clear and specific treatment of Defendant's claim—Defendant would be paid its secured claim in full plus interest at the presumptively reasonable rate in effect at that time of 5.25%.  Defendant had proper notice of its treatment under the plan and failed to object to confirmation or challenge the confirmed plan at any point during the pendency of the bankruptcy case.  With certain exceptions not applicable here, § 1322(b)(2) of the Bankruptcy Code allows a debtor to permanently modify a secured creditor's claim upon confirmation of her Chapter 13 Plan, including the number and timing of payments, and the interest rate applied.  *In re Crawford,* 532 B.R. 645, 648 (Bankr.

---

[19] ECF No. 13.
[20] ECF Nos. 17 and 18, filed Feb. 16, 2024.

6

D.S.C. 2015). Based upon Defendant's failure to object to its treatment after proper notice, Defendant is deemed to have accepted the plan under 11 U.S.C. § 1325(a)(5)(A). *See In re Powell,* 640 B.R. 882, 883 (Bankr. D.S.C. 2022); *Crawford,* 532 B.R. at 650 (citing cases).

As set forth above, the confirmed Plan provides: "Secured creditors paid the full secured claim provided for by this plan shall satisfy any liens within a reasonable time." Despite notice, Defendant did not contest the Plan's requirement that it satisfy its lien once paid in full; thus, it is bound to comply with this term of the confirmed Plan. As demonstrated by the Trustee's Report of Completion of Plan Payments by Debtor, Defendant received payment in full of its secured claim through its Agent and therefore was required by the confirmed Plan to satisfy its lien within a reasonable time. The unrebutted evidence indicates that Defendant blatantly refused to satisfy its lien in violation of the Plan despite multiple requests from the Plaintiff and her counsel. Furthermore, despite service of the Complaint and Request for Default Judgment, Defendant has failed to file a response or appear at any hearing held in this Adversary Proceeding and has willfully ignored Plaintiff's efforts in this proceeding to obtain a release of lien. Such actions constitute an abuse of process.

Moreover, Defendant wrongfully repossessed Plaintiff's Vehicle in violation of the Court's Discharge Order and the discharge injunction provided under 11 U.S.C. § 524(a), which enjoins a creditor from undertaking any action to collect or recover on any discharged debts. 11 U.S.C. § 524(a). "While a violation of the discharge injunction does not provide an express remedy akin to § 362(k) for violations of the automatic stay, § 105(a) allows a bankruptcy court to hold a creditor in civil contempt, and impose contempt sanctions, for violating the discharge injunction."[21]

---

[21] The automatic stay under § 362(a) protects a debtor from a creditor's actions to collect or recover debts while the bankruptcy case is pending. 11 U.S.C. § 362(a). Section 362(k) allows a debtor to recover damages for willful violations of the automatic stay, providing that "an individual injured by any willful violation of a stay provided by

7

*Carnegie v. Nationstar Mortgage, LLC (In re Carnegie),* 621 B.R. 392, 401 (Bankr. M.D.N.C. 2020) (citing *Taggart v. Lorenzen,* 139 S. Ct. 1795, 1801 (2019)); *see also In re McIntosh*, No. 02-25039, __ B.R. __, 2024 WL 140236 (Bankr. S.D. Fla. Jan 12, 2024); *In re Brosky,* 649 B.R. 715, 718 (Bankr. D.S.C. 2023).

> Under section 105(a) of the Bankruptcy Code,
>
> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Having determined that Defendant is in contempt of the Discharge Order and the discharge injunction, the Court must determine what sanctions are appropriate in this case. In *Taggart,* the Supreme Court imposed restrictions on a bankruptcy court's ability to impose civil contempt sanctions for violation of a discharge order, holding that the bankruptcy court may only "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." 139 S. Ct. at 1801. The Supreme Court further stated that civil contempt is not appropriate where there is "a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Id.* As the Court in *In re McIntosh* recently noted,

> [N]othing in *Taggart* suggests any modification to a debtor's prima facie burden to prove by clear and convincing evidence that a creditor violated the discharge order. What *Taggart* does is essentially provide an affirmative defense to the creditor, which only comes into play after the debtor makes her prima facie case. Thus, even if a court finds by clear and convincing evidence that a creditor violated the discharge order, the court may only "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." If the creditor can establish a fair ground of doubt as to whether its actions violated the discharge order, under *Taggart* the court cannot impose civil contempt sanctions.

---

this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages."

8

*In re McIntosh*, 2024 WL 140236, at *7.

Under the circumstances of this case, there is no fair ground of doubt that Defendant's conduct was wrongful and violated the Plan's discharge injunction.  Defendant received proper notice of the bankruptcy case and of the Plan's treatment of its claim but never objected to the treatment of its claim.  Even now, after violating the terms of the Plan and the injunction afforded Plaintiff through her bankruptcy case, Defendant has failed to appear in the Adversary Proceeding despite proper service of all pleadings and clear knowledge of what has transpired in this proceeding to date.   Defendant timely filed a proof of claim and received full payment of that claim plus interest as provided by the Plan.  The payments were properly made to the Agent as instructed in the Proof of Claim.  Moreover, the language of the Plan was clear in its requirement that Defendant was required to satisfy its lien within a reasonable time.  The evidence indicates that Defendant refused to comply with this requirement and indicated that it did not intend to comply in the future.  There is no evidence that Defendant requested additional time to satisfy and deliver the lien to Plaintiff.  Instead, according to Plaintiff's Counsel, Defendant was hostile and uncooperative.  Under these circumstances, the Court finds there is no objectively reasonable basis to conclude that Defendant's conduct might be lawful under the Discharge Order; therefore, sanctions are appropriate.

"Damages awarded from civil contempt are . . . either coercive in an attempt to push a violating party into compliance with a court order, or remedial in an attempt to restore losses from violation of a court order." *In re Skaggs,* No. 17-50941, 2023 WL 322559, at * 157 (Bankr. W.D.Va. Aug. 9, 2022) (quoting *In re Cordova,* 635 B.R. 321, 340 (Bankr. N.D. Ill. 2021)).  Under § 105(a), this Court has previously compelled the release of a lien and delivery of a certificate of title after the creditor failed to comply with the terms of a confirmed chapter 13 plan and awarded

9

attorney's fees and expenses incurred to ensure compliance with the confirmed plan. *In re Brosky*, 649 B.R. at 719; *In re Seaver*, 640 B.R. 555, 558 (Bankr. D.S.C. 2022); *In re Simmons,* 623 B.R. 288, 292 (Bankr. D.S.C. 2021). In this case, an order compelling Defendant to comply with the Plan and the Discharge Order by releasing its lien on the Vehicle and delivering the certificate of title to Plaintiff is appropriate. In light of Defendant's prior refusals to release its lien and turn over the certificate of title, the Court further finds that a coercive sanction of $100 per day if Defendant does not comply with this Order is also appropriate.

As a result of Defendant's conduct, Plaintiff has incurred attorney's fees and actual damages in the form of mileage costs to recover her Vehicle and personal items. Therefore, the Court finds that an award of attorney's fees and expenses is also appropriate. At the hearing, Plaintiff's Counsel introduced into evidence a supplemental affidavit stating that Plaintiff has incurred attorney's fees and costs in the amount of $4,345.00 in connection with this Adversary Proceeding. After a review of the time entries and the fees sought based on counsel's hourly rate of $275.00, the Court finds this amount to be reasonable. Plaintiff also submitted an affidavit indicating that she was required to drive a total of 60 miles to make two trips to recover her personal items and Vehicle because Defendant refused to deliver them to her as ordered. Accordingly, the Court finds that an award of actual damages for mileage in the amount of $40.20 is reasonable and appropriate in this case.[22]

To deter Defendant from similar conduct in the future, Plaintiff further requests punitive damages based upon Defendant's willful and vindictive conduct in repossessing the Vehicle in violation of the discharge injunction and continuing refusal to satisfy its lien and return title to the

---

[22] In her Affidavit, Plaintiff requested mileage for two round trips totaling 60 miles at the reimbursement rate of $0.656 per mile, which she asserted was $36.30, but the correct calculation would be $39.36 at that rate. The Court will instead apply the current mileage reimbursement rate of $0.67 per mile, which allows for reimbursement of $40.20.

10

Vehicle as ordered. Prior to the Supreme Court's *Taggart* decision, this Court observed that punitive damages may be appropriate where the creditor engages in egregious or vindictive conduct indicating a specific intent to violate the discharge injunction. *See In re Gecy,* 510 B.R. 510, 525 (Bankr. D.S.C. 2014). While clarifying the standard for liability for violations of the discharge injunction, *Taggart* did not change the standard for determining *remedies* for violations of the bankruptcy discharge. *Anderson v. Credit One Bank, N.A. (In re Anderson),* 641 B.R. 1, 43 (Bankr. S.D.N.Y. 2022) (finding that the bankruptcy court continues to have the ability to award non-compensatory or punitive damages for violation of the discharge injunction in appropriate circumstances).

Post *Taggart,* other bankruptcy courts have recognized that punitive damages may be continue to be awarded in circumstances where it is necessary to coerce the contemnor's compliance with a court's order and where a creditor engages in egregious or vindictive conduct. *See In re Weaver,* No. 17-32042, 2023 WL 3362064, at *9 (Bankr. E.D. Mich. May 10, 2023) (awarding $33,000 in punitive damages for violation of discharge injunction, noting that bankruptcy courts have the inherent power to punish parties for their contemptuous violation of the discharge injunction through the imposition of punitive damages, but further observing that such damages are limited to circumstances where there exists a complete and utter disrespect for the bankruptcy laws) (citing cases); *In re Skaggs,* No. 17-50941, 2023 WL 322559, at *1 (Bankr. W.D.Va. Jan. 19, 2023) (noting that punitive damages are often awarded to coerce compliance but declining to award them under the circumstances of that case); *In re Sorenson,* No. 11bk33448, 2022 WL 2718871, at *12 (Bankr. N.D.Ill. Jul. 13, 2022) (noting that under existing Seventh Circuit precedent, courts are permitted to award punitive damages for violations of the discharge injunction, specifically where the creditor's conduct was particularly egregious). In *Skaggs,* the

11

defendants had violated the discharge injunction by seeking to collect a judgment debt that had been voided in the debtors' bankruptcy case. 2023 WL 322559, at *2. The court did not award punitive damages for violation of the discharge injunction because it had previously ruled in the case that punitive damages were not necessary to coerce the defendants to cease collection activity as they had done so after debtor's counsel had gotten involved. *Id.* at *1. Instead, the Court imposed a remedial sanction upon the defendants in the amount of $25,000, representing the plaintiffs' attorney's fees in the matter. *Id.* at *8.

The Court finds that Defendant's conduct in repossessing the Vehicle and refusing to satisfy its lien and return the title to Plaintiff is sufficiently egregious to support an award of punitive damages in this case. The evidence shows that Defendant demonstrated a clear disrespect for this Court's orders and disregard for the discharge injunction that Plaintiff was awarded at the completion of her Plan payments by refusing to deliver to her the title to the Vehicle. However, focusing on the coercive nature of damages to be awarded, Counsel even acknowledged at the hearing that the goal in this Adversary Proceeding is to have Defendant deliver the title to Plaintiff. Given the *per diem* sanctions that will accrue if Defendants does not comply with the requirements of this Order, the Court awards punitive damages in the amount of $2,000.00 to Plaintiff.[23]

## CONCLUSION

In summary, it is hereby ordered that:

1. Defendant is in contempt of the Discharge Order in this case;

2. Defendant shall take whatever steps are necessary to release its lien **and** deliver title to the Vehicle to Plaintiff **on or before April 1, 2024**;

---

[23] In so holding, the Court has considered the fact that Defendant is not a national corporation and its financial wherewithal is unknown. Defendant's actions are no doubt egregious and inexcusable, but in an attempt to coerce Defendant to abide by the terms of the confirmed Plan, release the lien, and deliver the title to the Vehicle to Plaintiff, the Court is also imposing daily sanctions to the extent Defendant does not comply with the terms of this Order.

3. To the extent that Defendant has misplaced the title to the Vehicle, it shall so inform Plaintiff's Counsel on or before March 28, 2024 and shall facilitate obtaining a new title from the Department of Motor Vehicles or take whatever other steps necessary to facilitate Debtor obtaining the title to the Vehicle;

4. Defendant shall pay $4,345.00 in attorney's fees by check or money order payable to Plaintiff's Counsel, Eric Reed, Reed Law Firm, PA, 220 Stoneridge Dr. Suite 301, Columbia, SC 29210, **on or before April 1, 2024**.

5. Defendant shall pay $40.20 in actual damages and $2,000.00 in punitive damages to Plaintiff, by check or money order made payable to Vanessa Denise Daniels, and delivered by certified or tracked mail to Plaintiff, C/O Reed Law Firm, PA, 220 Stoneridge Dr. Suite 301, Columbia, SC 29210, **on or before April 1, 2024**.

6. Upon Defendant's failure to comply with the requirements of this Order by April 1, 2024, a sanction of **$100.00 per day shall begin to accrue** on April 2, 2024, until such time as Defendant complies with this Order.

7. To the extent that Defendant does not comply with the terms of this Order, Plaintiff may seek further relief from the Court as it deems appropriate.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**03/19/2024**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 03/19/2024